In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00148-CV


______________________________





IN RE: ESTATE OF LONIE WASHINGTON, DECEASED





 


On Appeal from the County Court at Law


Harrison County, Texas


Trial Court No. 91-12,236 CCL




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



I. Factual and Procedural Background 

 Lonie Washington died in 1991, and his estate has been involved in litigation for many
years. (1) Washington was married at the time of his death, but had no children. His will specifically
named the relatives (aunts and uncles) whose children were to receive specified percentages of his
estate. He directed all assets to be sold and the money divided (apparently anticipating some
disagreements amongst the family) in accordance with the stated percentages. 

 Washington determined the percentages "based upon my opinion of how much my aunts and
uncles helped my mother and father and me and my brothers." He also provided stringent
requirements for taking, among other things requiring that only children living at the time of his
death could take, that no spouse or other heir of any devisee could ever take under the will, and that
only children of those aunts and uncles born under valid ceremonial wedlock could take under the
will.

 In this case, the petitioners filed a declaratory judgment action and thereafter a motion for
summary judgment seeking several types of relief, including removal of Bobbie Washington (the
widow) as the administrator. The court signed an order removing Bobbie as administrator and
appointing a replacement administrator, but did not address any of the other matters set out in the
pleading or motion. This order, entered after a hearing was conducted, did not reference either the
motion for summary judgment or declaratory judgment petition. The judgment from which the
appeal was brought does only two things: it orders the long-time administrator of the estate removed
(the widow) and replaces her with a new administrator. 

 In her brief, the removed administrator does not attack the order on its merits. The arguments
raised on appeal, which were also presented to the trial court by pleading, are all matters of
avoidance--that the individuals who sought that relief had no standing to seek such relief, or that
they had waited too long to seek it. The administrator also argued that no request for declaratory
judgment may be considered by the trial court on the basis of lack of standing, laches, and the
running of limitations.

 Appeals brought to this Court must be from final judgments or appealable orders. We do not
issue opinions globally applying the law to pending cases. We are prohibited from issuing an
advisory opinion, the distinctive feature of which is that it decides an abstract question of law
without binding the parties. Valley Baptist Med. Ctr. v. Gonzalez, 33 S.W.3d 821 (Tex. 2000). Thus,
we emphasize that our decision is based solely on the appeal before us.

II. Jurisdiction

 As in most probate matters, the first question is whether this order is appealable. Generally,
appeals may be taken only from final judgments. Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195
(Tex. 2001). Probate proceedings are an exception to the "one final judgment" rule; in such cases,
"multiple judgments final for purposes of appeal can be rendered on certain discrete issues." Id. at
192; De Ayala v. Mackie, 193 S.W.3d 575, 578 (Tex. 2006). 

 It is not clear that the order is a ruling on the motion for summary judgment. It states that
it was entered after the matter was heard, after proper notice had been given. The county clerk has
not included a copy of the court's docket. See Tex. R. App. P. 34.5(a)(3).

 Courts have often allowed appeals from an order removing an executor or administrator. In
re Estate of Miller, 243 S.W.3d 831 (Tex. App.--Dallas 2008, no pet.); Geeslin v. McElhenney, 788
S.W.2d 683 (Tex. App.--Austin 1990, no writ); see In re Finley, 220 S.W.3d 608 (Tex.
App.--Texarkana 2007, no pet.) (appeal from order removing guardian of estate).

 Similarly, this Court held in an unpublished 2000 opinion that an order settling rights as
executor is the end of a discrete phase of the probate proceeding and is thus final. In re Estate of
Spivey, No. 06-98-00134-CV, 2000 Tex. App. LEXIS 35 (Tex. App.--Texarkana Jan. 5, 2000, no
pet.) (not designated for publication). We stated that there were no ongoing proceedings relevant
to that specific issue, and so the order was final. See also In re Estate of Vigen, 970 S.W.2d 597, 598
(Tex. App.--Corpus Christi 1998, no pet.); Spies v. Milner, 928 S.W.2d 317, 318 (Tex. App.--Fort
Worth 1996, no writ).

 Thus, under controlling authority, the September 4, 2007, order of the trial court removing
Bobbie as administrator, directing her to prepare and file a final accounting for the fourteen years
that she administered the estate and to turn over records and assets to the new administrator, and
appointing Kenneth O. Goolsby as successor administrator, is a final and appealable order under
applicable standards of probate law. 

III. The Issue Presented

 A facially final and appealable order, under the definitions of the Texas Probate Code, was
entered by the trial court. It appears that it was not rendered based merely on the summary judgment
pleadings, but after a hearing. A hearing was conducted concerning the administrator, as shown by
two very short excerpts requested and filed by the appellee, and the existence of a hearing was
acknowledged by the administrator in her motion for new trial, in which she complains about an
"ambush" hearing.

 We have, however, been provided by the appellee with an excerpt from the hearing that
appears to dispose of this particular problem--on yet a different basis. The excerpt of the hearing
conducted by Judge Ammerman appears to clarify that he is ruling not based on the petitioners'
motion, but on his own authority sua sponte. (2) 

 THE COURT: . . . Now, regardless of whether these people are totally
unrelated to this case, I have the duty to oversee these files; and once it's brought to
my attention, I have the authority on my own motion to do certain things. I made a
ruling that Ms. Washington was a dependent administrator that means -- that kicks
in under the law her duty to file her annual accountings and if somebody had walked
in off the street and pulled out that file and pointed that out to me, I would tell them
thank you very much.


 Ms. Washington is removed as the administrator, and I'm going to appoint --
she failed to follow her duty -- I'm going to appoint Ken Goolsby -- he's a local
Certified Public Accountant -- to be the dependent administrator of this estate.


 The alleged problems with the representative's administration of the estate were obviously
brought to the court's attention by the petitioners. 

 The appellant has neither sought nor filed a reporter's record of the hearing. Appellate courts
must base their decisions on the record as made and brought forward, not on a record that should
have been made or that could have been made. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 411
(Tex. 1998). The controlling caselaw clearly states that, when a record is incomplete (and the rules
on partial records do not apply--which they do not), we must presume that the missing portion of
the record supports the factual determinations made by the fact-finder. Bennett v. Cochran, 96
S.W.3d 227, 230 (Tex. 2002); In re Estate of Arrendell, 213 S.W.3d 496, 503 (Tex.
App.--Texarkana 2006, no pet.).

 It is unclear from the record whether the trial court granted this judgment as a summary
judgment, trial on the merits, or whether it was an order based on the court's own motion. The
appellant requests only that this Court find that petitioners had no standing to bring an action, or that
limitations prevented their intervention in the probate proceeding. Appellant does not allege that the
trial court did not have evidence to support a sua sponte order removing the administrator for failing
to file the required accounts. See Tex. Probate Code Ann. § 222(2). Upon proof of the failure to
file the required accounts, the trial court had the authority to remove the administrator regardless of
the pleading of the petitioners. Id. At the hearing, the trial court recognized such authority and
immediately announced the administrator's removal. No additional fact-findings were requested or
entered. No challenge has been made that the trial court did not have an evidentiary basis for such
removal. The decision to remove the administrator was a conclusion of law, and the judgment
should be upheld on appeal if the order may be sustained on any legal theory supported by the
evidence. Pickelner v. Adler, 229 S.W.3d 516, 524 (Tex. App.--Houston [1st Dist.] 2007, pet.
denied). The issues of standing and statute of limitations were not adjudicated or necessary in order
for the court to take this action; therefore, those issues are not relevant on this appeal. 

 We affirm the judgment of the trial court.



 Jack Carter

 Justice


Date Submitted: August 15, 2008

Date Decided: September 3, 2008

1. Several appeals have been presented to the Court. In re Estate of Washington, No. 06-96-00010-CV, 1996 Tex. App. LEXIS 4414 (Tex. App.--Texarkana Oct. 7, 1996) (not designated for
publication), op. on reh'g, 1996 Tex. App. LEXIS 5333 (Tex. App.--Texarkana Dec. 3, 1996, writ
denied); In re Estate of Washington, No. 06-08-00016-CV, 2008 Tex. App. LEXIS 2917 (Tex.
App.--Texarkana Apr. 23, 2008, no pet.) (mem. op.); In re Sylvester Gene Washington, No. 06-98-00001-CV (Tex. App.--Texarkana Jan. 7, 1998, no pet.). 
2. The court has explicit statutory authority to remove an administrator on its own motion. 
Tex. Probate Code Ann. § 222 (Vernon Supp. 2008).


en="false"
 UnhideWhenUsed="false" Name="Medium Grid 3 Accent 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00113-CV

                                                ______________________________

 

 

                                       MOTOR CAR
CLASSICS, LLC,

D/B/A DREAM CAR CLASSICS
AND ART WEISS, Appellants

 

                                                                V.

 

                                       RONALD E. ABBOTT, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 78014

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

I.          BACKGROUND

            In pursuit of his
interest in becoming a collector of classic automobiles, Ronald E. Abbott, a
resident of Lamar County, Texas, decided to purchase a 1962 Cadillac Eldorado
Biarritz convertible (the Eldorado) he found in an advertisement placed on eBay
Motors by Motor Car Classics, LLC, d/b/a Dream Car Classics, a Florida limited
liability company (Dream Car).  The eBay
advertisement identified the Dream Car website, which contained numerous
photographs of the Eldorado, along with numerous descriptive representations
accompanying each photograph, such as everything works, immaculate
throughout, and serviced-tuned-ready to go.  After perusing the photographs and reading the
advertisements details, Abbott contacted Art Weiss,[1] a
salesman for Dream Car, via electronic mail to confirm the information
contained in the advertisement and to ask follow-up questions.  Weiss responded to Abbotts e-mail address in
Texas, including an e-mail dated January 13, 2009, wherein Weiss stated that
Abbott could rely on [e]very word of text in the Dream Car advertisement
describing the Eldorado.  

            Upon
Weisss recommendation, Abbott retained the services of William Trier to
conduct an inspection of the Eldorado in Florida.  Triers inspection report concluded that the
Eldorado was in very good condition, with a value of $55,500.00.  Abbott ultimately agreed to purchase the
Eldorado, sight unseen, for the sum of $40,000.00 and thereafter wire
transferred the funds to Dream Car in Florida. 
A purchase contract was then signed by Abbotts agent in Texas (Abbott
was out of the country at the time) and the Eldorado was delivered to Abbott at
his request and expense, on January 27, 2009, in Lamar County, Texas.  

            Upon
delivery of the Eldorado, Abbott noted a number of problems which were not
disclosed prior to the sale[2]
and unsuccessfully attempted to rescind the contract.  Abbott thereafter sued Dream Car, Weiss, and
Trier in Lamar County, Texas, alleging causes of action for rescission, breach
of contract, misrepresentation, and violation of the Texas Deceptive Trade
Practices Act.[3]


            In
March 2009, Weiss filed an unverified pro se answer on his own behalf, and
purportedly on behalf of Trier, in which he alleged the trial court lacked
personal jurisdiction over the defendants.[4]  In the meantime, Abbott served requests for
admissions to Dream Car, Weiss, and Trier.[5]  Dream Car filed its verified special
appearance on June 29, 2009.  The
following day, Abbott filed a motion for summary judgment against each of the
three defendants.[6]  Trier filed a verified special appearance on
July 8, 2009.[7]


            Dream
Cars special appearance was set for hearing, which took place on August 25,
2009.[8]  Following the hearing, the trial court
entered an order which indicated that it considered the special appearances
filed on behalf of Dream Car and on behalf of Trier, and denied both.[9]  Consideration was given to the affidavit
filed in support of the Dream Car special appearance and the response filed by
Abbott.[10]  

            Immediately
following the hearing on Dream Cars special appearance, the trial court
entertained Abbotts motion for summary judgment filed against Dream Car, Weiss,
and Trier.[11]  At the conclusion of that hearing, the trial
court granted summary judgment against each of the three defendants and issued
its written order granting summary judgment on September 10, 2009.[12]  The judgment holds the defendants jointly and
severally liable of the sum of $90,000.00, plus $6,000.00 in attorneys fees
and additional contingent fees on appeal. 
Dream Car and Weiss contend on appeal (1) that the trial court erred in
finding it had jurisdiction over them; (2) that the trial court erred in
denying their special appearances; and (3) that the trial court abused its
discretion by granting summary judgment based on deemed admissions with a
pending motion to strike deemed admissions.  We affirm the trial courts order finding that
Dream Car and Weiss are subject to jurisdiction in the State of Texas, and
affirm the trial courts grant of summary judgment against them.

II.        BURDEN
OF PROOF AND STANDARD OF REVIEW

            In a suit against a nonresident
defendant, the initial burden of proof is on the plaintiff to plead sufficient
allegations to bring the defendant within the provisions of the Texas long-arm
statute.  See Kelly v. Gen. Interior Constr., Inc., 301 S.W.3d 653, 658 (Tex.
2010).  When a plaintiff meets its
pleading burden, the burden of proof shifts to the nonresident defendant, who
must then negate all possible grounds for personal jurisdiction alleged by the
plaintiff.  Id.; BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002).  Personal jurisdiction is a question of law,
which we review de novo.  Retamco Operating, Inc. v. Republic Drilling
Co., 278 S.W.3d 333, 337 (Tex. 2009).  
In resolving this question of law, a trial court must often resolve
questions of fact.  Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 80506
(Tex. 2002).  Our courts of appeals may
review the fact findings for both legal and factual sufficiency.  Ortiz
v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). 
We review de novo the trial courts legal conclusions.  Marchand,
83 S.W.3d at 794.  Where the record
contains no findings of fact and conclusions of law (as in this case), we must
imply all findings of fact necessary to support the trial courts judgment that
are supported by the evidence.  Id. at 795. 

III.       ANALYSIS 

            A.        Personal
Jurisdiction

            Dream
Car is a Florida limited liability corporation. 
Weiss is presumably a Florida resident.  The Texas long-arm statute permits the
exercise of personal jurisdiction over a nonresident defendant, limited by the
federal constitutional requirements of due process.  Id.  Personal jurisdiction over a nonresident
defendant is properly exercised within the confines of due process when (1) the
defendant has established minimum contacts with Texas and (2) the exercise of
jurisdiction comports with traditional notions of fair play and substantial
justice.  See Intl Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945). 


            The
purpose of the minimum contacts analysis serves to protect a nonresident from
being hailed into court when his relationship with Texas is too attenuated to
support jurisdiction.  Schlobohm v. Schapiro, 784 S.W.2d 355,
357 (Tex. 1990).  Thus, a nonresident
defendant must have purposefully availed himself of the privileges and
benefits of conducting business in Texas to establish sufficient contacts with
Texas to confer personal jurisdiction.  See Burger King Corp. v. Rudzewicz, 471
U.S. 462, 47476 (1985); Xenos Yuen v.
Fisher, 227 S.W.3d 193, 200 (Tex. App.Houston [1st Dist.] 2007, no
pet.).  The defendants activities,
whether they consist of direct acts within Texas or conduct outside Texas, must
justify a conclusion that the defendant could reasonably anticipate being
called into court in Texas.  World-Wide Volkswagen Corp. v. Woodson,
444 U.S. 286, 297 (1980).  A defendant is
not subject to jurisdiction here if its Texas contacts are random, fortuitous,
or attenuated.  Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 226 (Tex. 1991).  It is
the quality and nature of the defendants contacts, rather than their number,
that are important to the minimum contacts analysis.  Id. at 230 n.11.

            Personal
jurisdiction may be based either on specific jurisdiction or general
jurisdiction.  For a court to exercise
specific jurisdiction over a nonresident defendant, two requirements must be
met:  (1) the defendants contacts with
the forum must be purposeful, and (2) the cause of action must arise from or
relate to those contacts.  Id. at 227; Coleman, 83 S.W.3d at 806. 
General jurisdiction exists when the defendants contacts with Texas are
continuous and systematic so that the forum may exercise personal jurisdiction
over the defendant even if the cause of action did not arise from or relate to
activities conducted within the forum state. 
Marchand, 83 S.W.3d at
796.  General jurisdiction therefore
permits a forum to exercise jurisdiction over a defendant even if the cause of
action did not arise from or relate to a defendants contacts with the
forum.  Coleman, 83 S.W.3d at 80607. 
This is a more demanding minimum contacts analysis than specific
jurisdiction.  Id. at 807.

            B.        Jurisdiction:  Dream Car

            Dream Car contends the trial court
erred in overruling its special appearance contesting the jurisdiction of the
Texas court.  The affidavit of Andrew M.
Denis, manager and member in the company of Motor Car Classics, LLC, d/b/a
Dream Car Classics, indicates that Dream Car does not direct market in Texas,
nor does it advertise in a way that specifically targets Texans; Dream Car does
not have a physical office or location in Texas and is not required to maintain
a registered agent in Texas; none of Dream Cars officers, employees, or agents
have traveled to Texas pertaining to this matter or any other business matter
of Dream Car; the Eldorado was shipped to Texas at the direction and expense of
Abbott; the percentage of Dream Cars total sales to Texas residents is
approximately six percent since 2005 where 13 of 205 cars sold nationwide were
sold to Texas residents.  The evidence
further indicates that Abbott located the Eldorado on an eBay Motors
advertisement by Dream Car Classics.  The
eBay advertisement identified the Dream Car website, which contained a number
of representations regarding the condition of the Eldorado (claimed now to be
false) along with photographs of the Eldorado. 
In essence, eBay provided a portal through which Abbott contacted Dream
Car; the actual purchase, however, did not take place on eBay or through eBay.  Abbott initiated contact with Dream Car.  The Dream Car website shows classic vehicles
to customers like Abbott throughout the world. 
In addition, Abbott initiated e-mail correspondence with Weiss (a Dream
Car employee) and received Weisss e-mail responses at his residence in
Texas.  It is also alleged that Dream Cars
website is sufficiently interactive to support jurisdiction over Dream
Car.  

                        (1)        Do
Deemed Admissions Establish Jurisdiction Over Dream Car?

            Despite
the evidence submitted via the Denis affidavit contesting jurisdiction over
Dream Car, Abbott contends admissions deemed against Dream Car are sufficient
to establish jurisdiction.  We agree.

            Abbott
maintains that his request for admissions were deemed admitted, having been
served on Dream Car on April 6, 2009, and never having been answered.  Dream Car does not contest this
assertion.  Rule 198.2(a) of the Texas
Rules of Civil Procedure requires that a responding party must serve a written
response to request for admissions on the requesting party within 30 days
after service of the request, except that a defendant served with a request
before the defendants answer is due need not respond until 50 days after
service of the request.  Tex. R. Civ. P. 198.2(a).  Whether Dream Cars responses were due in thirty
or in fifty days after service is immaterial here, since responses to Abbotts
request were not made.  Rule 198.3 states
that the trial court may permit a party to withdraw an admission if the party
shows good cause for the withdrawal and the court finds that the party relying
on the deemed admissions will not be unduly prejudiced.  Tex.
R. Civ. P. 198.3.  Dream Car did
not file a motion to strike or to withdraw the deemed admissions.[13]  The admissions therefore are a part of the
record before this Court.  The following
request for admissions were, inter alia,
deemed admitted:


 Admit
 that Dream Car Classics conducts business in the State of Texas. 
 Admit
 that Dream Car Classics seeks business in and from residents and/or
 entities in the State of Texas. 
 Admit
 that Dream Car Classics conducted business in Texas with regard to the
 transaction made the basis of this lawsuit.  
 Admit
 that Weiss is the sales manager for Dream Car Classics.  
 Admit
 that Weiss sought business in and from the State of Texas on behalf of
 Dream Car Classics.  


            Dream
Car maintains that the trial court could not base its jurisdictional decision
on the foregoing deemed admissions because the deemed admissions involve purely
legal issues and thus have no effect.  Boulet v. State, 189 S.W.3d 833, 838
(Tex. App.Houston [1st Dist.] 2006, no pet.) (rule regarding request for
admissions does not contemplate or authorize admissions to questions involving
points of law); see also Fort Bend Cent. Appraisal Dist. v. Hines
Wholesale Nurseries, 844 S.W.2d 857, 85859 (Tex. App.Texarkana 1992,
writ denied) (request for admissions may ask party to admit or deny an issue of
fact or mixed issue of fact and law, but not purely legal issue).  

            Here,
the request does not seek admissions of purely legal issues.  That is, if a request were to ask a party to
admit that he was subject to the jurisdiction of the Texas court, that request
would involve a purely legal issue.  See Marchand, 83 S.W.3d at 794 (whether
trial court has personal jurisdiction over defendant is legal issue).  However, the requests at issue do not focus
on the legal question of whether Dream Car is subject to the jurisdiction of
the Texas court.  Instead, and most
pointedly, the requests focus on Dream Cars conduct of business in the State
of Texas with regard to the transaction made the basis of this lawsuit, i.e.,
the chain of events, including all representations and negotiations, resulting
in and including the sale of the Eldorado to Abbott.  At most, such requests involve the application
of law to fact, which is permissible under Rule 198.1 of the Texas Rules of
Civil Procedure.[14]  Rule 120a directs that, The court shall
determine the special appearance on the basis of the pleadings, any
stipulations made by and between the parties, such affidavits and attachments
as may be filed by the parties, the
results of discovery processes, and any oral testimony.  Tex. R.
Civ. P. 120a(3) (emphasis added). 
Requests for admissions are a part of the discovery process. The trial
court, after having reviewed the deemed admissions, determined the legal
question of whether it had jurisdiction over Dream Car.  The record before us supports that
conclusion.  

            This
case presents issues similar to those resolved by our sister court in Southwest Aviation Specialties, L.L.C. v.
Wilmington Air Ventures IV, Inc., No. 02-08-062-CV, 2008 WL 4938334 (Tex.
App.Fort Worth, Nov. 20, 2008, pet. denied) (mem. op.).  In that case, defendants, both Oklahoma
residents, were sued in Texas state court on breach of contract claims.  The plaintiff alleged that the defendants
conducted some work under the contracts while they were at an airport in Fort
Worth.  When the defendants failed to
timely respond to requests for admissions which established minimum contacts
with the forum, the requests were deemed admitted.  Id. at
*45.  The Fort Worth court concluded
that the deemed admissions provided a basis for the trial court to exercise
specific personal jurisdiction.  Id.[15]  Likewise, the deemed admissions in this case
describe relevant contacts by Dream Car and Weiss (on behalf of Dream Car) that
were purposeful rather than random, fortuitous, or attenuated.  Because these contacts were purposeful and
because the cause of action arises from these contacts, the trial court had
specific jurisdiction over Dream Car.  See Guardian
Royal, 815 S.W.2d at 227; Coleman,
83 S.W.3d at 807.    

            Because
we so find, we do not reach the question of whether the trial court could have
exercised specific or general jurisdiction over Dream Car in the absence of the
deemed admissions.                   (2)        Traditional Notions of Fair Play and
Substantial Justice

            Once we determine
the minimum contacts requirement is met, we must still consider whether the
exercise of personal jurisdiction comports with traditional notions of fair
play and substantial justice.  Guardian Royal, 815 S.W.2d at 226; Rudzewicz, 471 U.S. at 47576.  These factors include (1) the burden on the
defendant, (2) the interests of the forum state in adjudicating the dispute,
(3) the plaintiffs interest in obtaining convenient and effective relief, (4)
the interstate judicial systems interest in obtaining the most efficient
resolution of controversies, and (5) the shared interest of the several states
in furthering fundamental substantive social policies.  Guardian
Royal, 815 S.W.2d at 228.  In this
portion of the inquiry, it is the defendants job to present a compelling case
that the presence of some other considerations would render jurisdiction
unreasonable.  Rudzewicz, 471 U.S. at 479; Guardian
Royal, 815 S.W.2d at 231.  

            Applying
the named factors, we recognize there would be some burden on Dream Car in
defending itself in a Texas lawsuit. 
However, we also recognize that distance is not so important a factor
now as it has been historically.  Because
Abbott is a Texas resident, this State has an inherent interest in protecting
its citizens and providing them with a remedy for alleged violations of the law
within this State.  Abbott also has an
inherent interest in pursuing the lawsuit locally, rather than being required
to travel to Florida to pursue his interestsperhaps under a different set of
laws than those of his resident state. 
The factor of efficiency does not appear to be an issue in any
respect.  The final factor involves the
shared interest of the states in furthering fundamental substantive social
policies.  This factor is likewise not
implicated in this case.  We conclude
that the contacts involving Dream Car are not so attenuated as to violate
concepts of due process.  

            C.        Summary Judgment:  Dream Car

            Dream
Car and Weiss (collectively designated appellants) contend that the trial
court abused its discretion by granting summary judgment based on deemed
admissions with a pending motion to strike deemed admissions.  This point of appeal is somewhat confusing,
in light of the fact that only Weiss, and not Dream Car, filed a motion to
strike deemed admissions.  For claritys
sake, we will address the grant of summary judgment as to Dream Car and as to
Weiss separately, as different issues are brought to bear with respect to each
appellant.

            Dream
Car contends the trial court committed reversible error in using the deemed
admissions to grant summary judgment because due process concerns are
implicated when a party uses deemed admissions in an attempt to subvert the
presentation of a case on the merits, citing Wheeler v. Greene, 157 S.W.3d 439, 443 (Tex. 2005).  In that case, a pro se litigants rights as
joint managing conservator of her daughter were terminated and she was found
liable for malicious prosecution of the childs father in a summary judgment
based on sixty-four deemed admissions. 
The pro se defendant in Wheeler
filed responses to the request for admissions twenty-seven days after she
received them, thirty-five days after the mailbox rule deemed that they were
served on her, thus making them two days late. 
Id. at 441.  The plaintiff then filed a motion for summary
judgment based only upon the deemed admissions and failed to inform the court
that the defendant had responded.  Id.  The
Texas Supreme Court determined that even though Wheeler never filed a motion to
withdraw deemed admissions or a motion to allow a late response to the summary
judgment, the arguments and requests in her motion for new trial were
sufficient to put the trial court on notice of that complaint.  Id.
at 442.  Nothing in the record suggested
that prior to the grant of summary judgment, Wheeler actually realized that her
responses were late and that she needed to move to withdraw deemed admissions.  On this record, the lower courts could have
concluded that Sandra was wrong on her dates and wrong on how to correct them,
but not that either was the result of intent or conscious indifference, noting
that such conclusion might well be warranted if the same mistakes had been made
by a lawyer.  Id.

            This
case is distinguished from Wheeler in
a number of respects.  Here, Dream Car
was not acting in a pro se capacity. 
While a motion to strike deemed admissions was filed on behalf of Weiss,
no such motion was filed on behalf of Dream Car.  Unlike Wheeler, Dream Car should have been
aware that it never responded to the request for admissions and that it needed
to file a motion to withdraw those admissions. 
Abbotts motion for summary judgment, filed on June 30, 2009,
unequivocally states that Defendants failure to respond to the discovery results
in the admissions being deemed admitted.  The hearing on this motion did not take place
until August 25, 2009.  Thus, there
was ample opportunity to file a motion to withdraw the deemed admissions
subsequent to the filing of the summary judgment and prior to the hearing on
same.  

            Even
though the standard for withdrawing deemed admissions is based upon a showing
of good cause and no undue prejudice to the opposing party, the trial court is
not obligated to sua sponte withdraw deemed admissions.  While this Court does not endorse the use of
deemed admissions to preclude presentation of the merits of a case, we also may
not conclude that the trial court erred in failing to withdraw deemed
admissions in the absence of a request to do so.  

            We
do not believe, however, that the failure to file a motion to withdraw deemed
admissions is necessarily determinative of the outcome here.  Even in the absence of the deemed admissions,
the uncontroverted summary judgment evidence is sufficient to support the judgment
against Dream Car.  A plaintiff is
entitled to summary judgment on a cause of action if it conclusively proves all
essential elements of the claim.  See Tex.
R. Civ. P. 166a(a), (c); MMP, Ltd.
v. Jones, 710 S.W.2d 59, 60 (Tex. 1986). 
When reviewing a summary judgment, we take as true all evidence
favorable to the nonmovant, and we indulge every reasonable inference and
resolve any doubts in the nonmovants favor. 
HIS Cedars Treatment Ctr. of
Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  

            However,
when the summary judgment order does not specify the ground or grounds relied
on for its ruling, and its judgment rests on more than one independent ground
asserted by the movant, the aggrieved party must assign error to each ground,
or the judgment will be affirmed on the ground to which no complaint is
made.  Bridges v. Citibank, No. 2-06-081-CV, 2006 WL 3751404 (Tex. App.Fort
Worth, Dec. 21, 2006, no pet.) (mem. op.); Scott
v. Galusha, 890 S.W.2d 945, 948 (Tex. App.Fort Worth 1994, writ denied).  Here, the trial courts order granting
summary judgment did not specify the ground relied on for its ruling.[16]  The motion for summary judgment asserts two
independent grounds for the grant of judgment: 
(1) the deemed admissions; and (2) the substantive claims asserted
against Dream Carbreach of contract, violation of the Texas Deceptive Trade
Practices Act, and resulting damages and attorneys fees.  These substantive claims are supported by the
uncontroverted affidavits of Abbott and his attorney.  In order to assign error to a ground
supporting the motion for summary judgment, the nonmovant must present the
ground to the trial court in opposition to the motion for summary judgment.  State
Bd. of Ins. v. Westland Film Indus., 705 S.W.2d 695, 696 (Tex. 1986).  Dream Car made no such challenge in the trial
court or on appeal.  We, therefore,
affirm the order granting summary judgment on the substantive grounds left
unchallenged.[17]

            D.  Jurisdiction: 
Weiss (Refusal to Withdraw Deemed Admissions)

            Weiss
filed a pro se answer which initially contested the jurisdiction of the Texas
court, thus satisfying the due order of pleading requirement set forth in Rule
120a of the Texas Rules of Civil Procedure.[18] Dawson-Austin v. Austin, 968 S.W.2d 319,
32223 (Tex. 1998).

            As
pointed out previously, Abbott propounded requests for admissions to each of
the three defendants; none of the defendants responded in a timely manner.  Therefore, the requests for admissions were
deemed to have been admitted.  Tex. R. Civ. P. 198.2(c).  Those deemed admissions, among other things,
founded the basis for establishing the jurisdiction of the Texas court over
each of the defendants.

            Of
the defendants in the lawsuit, only Weiss filed a motion to strike the deemed
admissions.  In that motion, Weiss
explained that the existence of the request for admissions first came to the
attention of his attorney on June 29, 2009; the request for admissions was
omitted from the packet of other papers initially transmitted by Weiss in
Florida to his attorney in Texas. 

            Although
Abbotts motion for summary judgment was originally set for hearing on July 22,
2009, it was rescheduled for August 25, 2009, the same date set for the hearing
on the special appearances.  On the day
the motion for summary judgment and the hearing on the special appearances were
considered by the trial court, Weiss filed the motion to strike the deemed
admissions.  The trial court denied the
motion and treated the admissions to have been deemed. 

            Although
trial courts have broad discretion to permit or deny withdrawal of deemed
admissions, they cannot do so arbitrarily, unreasonably, or without reference
to guiding rules or principles.  Stelly v. Papania, 927 S.W.2d 620, 622
(Tex. 1996).  A ruling on whether to
strike deemed admissions will only be set aside upon a showing of clear abuse
of discretion.  Employers Ins. of Wausau v.
Halton, 792 S.W.2d 462, 464 (Tex. App.Dallas 1990, writ denied).  In order to obtain the relief of withdrawing
deemed admissions, the proponent of that relief must show (1) good cause
and (2) no undue prejudice.  Wheeler v. Green, 157 S.W.3d 439, 442
(Tex. 2005) (per curiam) (citing Tex. R.
Civ. P. 166a(c), 198.3).

            Good
cause is established when the failure to respond is accidental or the result
of a mistake, rather than intentional or the result of conscious indifference.  Stelly,
927 S.W.2d at 622.  Under his sworn
pleadings, Weiss maintained that the lack of the transmission of the request
for admissions to his attorney was inadvertent, due to a mistake on Weisss
part.  It would appear that Weiss met the
requirement of showing good cause.

            However,
good cause does not stand alone.  Undue
prejudice bars withdrawal of deemed admissions.  Tex. R.
Civ. P. 169(2); Stelly, 927
S.W.2d at 622.  Delay of trial is
considered a factor in determining prejudice against a party.  See N.
River Ins. Co. of New Jersey v. Greene, 824 S.W.2d 697, 701 (Tex. App.El
Paso 1992, writ denied).  Wal-Mart Stores, Inc. v. Deggs, 968
S.W.2d 354, 357 (Tex. 1998).

            As
noted above, Weisss attorney asserts that the existence of the deemed
admissions first came to his notice on June 29, 2009, but filed no pleading to
withdraw the deemed admissions until the date set for hearings, over two months
after the discovery of the inadvertence. 
Had this issue been addressed reasonably expeditiously by promptly
filing a motion to withdraw the deemed admissions, this may have obviated the
need for the hearing on the motion for summary judgment, which was likewise set
for the same date.  The trial court could
well have determined that the purpose in delaying the filing of the motion to
withdraw the deemed admissions had delay of a final hearing as its primary
goal.  Because delay of trial is a factor
to consider in determining whether prejudice to the other party can result, we
determine that it was within the discretion of the trial court to deny the
request.[19]

            Accordingly,
the Texas court has jurisdiction over Weiss based upon the deemed admissions.[20]

            E.        Summary Judgment:  Weiss

            Weiss maintains that the trial court
abused its discretion by granting summary judgment based on deemed admissions
with a pending motion to strike deemed admissions.[21]  As explained in the preceding section, the
trial court acted within its discretion to deny Weisss request to withdraw the
admissions deemed against him.  However,
even if the trial court had granted the motion to strike Weisss deemed
admissions, that would not resolve the issue of whether the summary judgment
entered against Weiss can stand.

            In
his brief on appeal, Weiss contends that the trial court should not have
granted summary judgment because he made a good cause showing as to why the
request for admissions was not answered. 
This statement is based on the inaccurate premise that the summary
judgment is based solely on the deemed admissions.  As discussed previously in this opinion, the
summary judgment was also based upon substantive claims submitted to the trial
court and supported by competent summary judgment evidence.[22]  On appeal, Weiss contests Abbotts affidavit
in support of the summary judgment.  In
particular, Weiss takes issue with paragraph ten of the Abbott affidavit
wherein Abbott opines on the value of the Eldorado:

As the owner of the
Eldorado, it is my opinion that on the date I purchased it, that it had a
market value in Lamar County, Texas of $10,000.00, and as a result, I have been
damaged in the sum of $30,000.00.  

 

Weiss
claims this is a wholly unfounded opinion that was challenged in the trial
court. 

            The
trial court correctly overruled Weisss objection to paragraph ten of the
Abbott affidavit.  A property owner can
testify as to the market value of his property even though he cannot qualify to
testify about the value of like property belonging to someone else.  See
Porras v. Craig, 675 S.W.2d 503, 504 (Tex. 1984).  The court in Porras explained further:

Even an owners testimony, however, is subject to
some restrictions.  In order for a
property owner to qualify as a witness to the damages to his property, his
testimony must show that it refers to market, rather than intrinsic or some
other value of the property.  This
requirement is usually met by asking the witness if he is familiar with the
market value of his property. 

 

Id. at 50405.

            Abbott testified in his affidavit as
to the market value of his Eldorado. 
This is competent evidence under Porras.  Because we determine the trial court had
discretion to deny the motion  to
withdraw deemed admissions, and because we overrule the sole basis upon which
Weiss has contested the Abbott affidavit, we are compelled to affirm the order
granting summary judgment.

            We affirm the judgment of the trial
court.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          June 8, 2010

Date Decided:             June 25, 2010











[1]Weiss
initially filed his answer contesting personal jurisdiction on a pro se basis; thereafter,
in July 2009, Michael P. Kelly (attorney for Dream Car) filed a notice of
appearance as counsel for Weiss.





[2]These
problems are alleged to include an inoperative heater, power seats, horn, power
door locks, cruise control, power windows, fuel gauge, transmission indicator,
and radio; numerous nicks, scratches, and dents; poor suspension; rusty
underside and exhaust system, which were covered with new paint; pitted body
chrome; and rusted gas tank.  In addition,
it is alleged that the Eldorado will not run over thirty miles per hour for
more than two to three miles at a time.

 





[3]Suit
was filed on February 5, 2009.  

 





[4]This
pleading, which contested personal jurisdiction, was not filed on behalf of
Dream Car, and in fact makes no mention of Dream Car.  However, the letter transmitting this
pleading to Abbotts attorney was signed by Andrew Denis, manager of Dream
Car.  Denis also signed the certificate
of service on this pleading.  

 





[5]On
April 6, 2009, Abbott served each defendant with 113 separate requests for
admissions.  Abbott states in his
affidavit that: 

 

Following Defendants answer to
the Petition, on April 6, 2009, I served Plaintiffs First Requests for
Admission and Requests for Production (the Discovery).  The Discovery contained clear instructions on
the timeframe to respond, the rules by which the same are governed, and the
place to send responses, but as of June 25, 2009, Defendants have failed to
respond to the Discovery. 

 

The defendants did not
contest the fact or propriety of service of said requests for admissions in the
trial court; likewise, no such complaint is raised on appeal.





[6]Evidence
relied upon in the summary judgment motion included the affidavit of Mark H.
How (attorney for Abbott) with attached requests for admissions served on each
of the three defendants together with Abbotts affidavit, with the attached
report of the condition of the Eldorado authored by Trier.  

 





[7]Trier
did not file a notice of appeal, and is not an appellant here.

 





[8]The
record reflects that Dream Cars special appearance was reset from an earlier
date until August 25. The record neither reflects a request for hearing on
Weisss special appearance, nor is there an order setting hearing on same.  Michael Kelly, attorney for both Dream Car
and Weiss, did not purport to represent Weiss at the hearing on Dream Cars
special appearance, and presented argument only on behalf of Dream Car.  

 





[9]The
record neither reflects a request for hearing on Triers special appearance,
nor is there an order setting hearing on same.

 





[10]Abbotts
response relied largely on the requests for admissions served on Dream Car,
Weiss, and Trier.  Neither Dream Car nor
Trier contend the requests were not deemed admitted. 

 





[11]An
order resetting the hearing on the motion for summary judgment was entered on
July 14, resetting the hearing previously set for July 22 to August 25,
2009.  No objection to this setting was
made by Dream Car, Weiss, or Trier.  At
the hearing, Kelly (attorney for Dream Car and Weiss) requested a continuance
of the summary judgment hearing. 
Discussion on the record at the hearing reflects that Kelly and counsel
for Abbott agreed to resetting the hearing on the motion for summary
judgment.  The trial court therefore
denied the oral request for continuance. 


 





[12]The
summary judgment stated that:

 

[O]ne of the basis [sic] of the
Plaintiffs Motion for Summary Judgment were Requests for Admission served upon
Defendants on or about April 6, 2009, which as of the date of the hearing on
Plaintiffs Motion for Summary Judgment, had not been responded to in any
form.  The Court further notes that on
the date of this hearing, Weiss filed his Motion to Strike Deemed Admissions, which
the Court considered untimely under the circumstances existing in this
cause.  

 

                The
Court further notes that although Plaintiffs Motion for Summary Judgment has
been on file since June 30, 2009, and has had the aforementioned two separate
settings, the Defendants have filed no response to said Summary Judgment as
contemplated by Tex. R. Civ. P. 166a. 
The Court notes that Weiss did file, on or about August 16, 2009,
Objections and Special Exceptions to Plaintiff Ronald E. Abbotts Motion for
Summary Judgment (the Weiss Objections). 
The Court further notes that on or about August 18, 2009, Weiss filed
that certain Defendants Response to Plaintiffs Motion for Summary Judgment
(Weiss Response).

 

                Upon
consideration of Plaintiffs Motion for Summary Judgment, the Weiss Objections,
the Weiss Response, and the argument of counsel, the Court is of the opinion
that Plaintiffs Motion for Summary Judgment should be granted . . . .





[13]Dream
Car expressed the concern that because it was appearing specially in the case,
there are only so many things a party can do . . . .  While we acknowledge the truth of that
statement, a nonresident defendant may file motions related to jurisdictional
discovery and seek the trial courts ruling on disputes that may affect the
evidence presented at the special appearance hearing without waiving its
special appearance.  Tex. R. Civ. P. 120a; Huynh v. Nguyen, 180 S.W.3d 608 (Tex.
App.Houston [14th Dist.] 2005, no pet.). 
A motion to set aside deemed admissions falls within this category.





[14]Requests
for admissions can encompass any matter within the scope of discovery,
including statements of opinion or of fact or of the application of law to
fact . . . .  Tex. R. Civ. P. 198.1.





[15]In
Southwest Aviation, as in this case,
the defendants had ample opportunity to file a motion to withdraw their
admissions, but failed to do so.





[16]The
order stated that: 

 

Upon
consideration of Plaintiffs Motion for Summary Judgment, the Weiss Objections,
the Weiss Response, and the argument of counsel, the Court is of the opinion
that Plaintiffs Motion for Summary Judgment should be granted and that the
following Summary Judgment should be entered. 





[17]In
this regard, we note that a trial court cannot grant summary judgment simply
because of a lack of response by the nonmovant. 
A summary judgment must be legally sufficient even if no response is on
file.  See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678
(Tex. 1979); Swedlund v. Banner, 970
S.W.2d 107, 10910 (Tex. App.Corpus Christi 1998, pet. denied).  Courts are required, however, to take
uncontroverted proper summary judgment evidence as true.  See
Medlock v. Commn for Lawyer Discipline, 24 S.W.3d 865, 870 (Tex.
App.Texarkana 2000, no pet.).  There is
no claim here that the uncontroverted summary judgment evidence was improper.

 





[18]Rule
120a requires that a special appearance must be filed prior to motion to
transfer venue or any other plea, pleading or motion . . . .  Tex.
R. Civ. P. 120a.





[19]The
lack of hearing specific to Weisss special appearance was not called to the
attention of the trial court.  Even
though avoidance of waiver could have been accomplished by filing a motion to
correct the trial courts order, the special appearance Weiss filed did not
contain verified evidence in support of his position that the Texas court did
not have jurisdiction.  

 





[20]We
do not reach the question of whether the trial court could have exercised
specific or general jurisdiction over Weiss in the absence of deemed
admissions.  Further, we conclude that
the contacts involving Weiss are not so attenuated as to violate concepts of
due process.

 





[21]Weiss
complains of being in a catch 22 situation because a foreign defendant risks
waiver of his special appearance in responding to anything.  We disagree. 
Rule 120a specifically permits participation in the discovery process
without the risk of waiving a special appearance.  The motion to strike deemed admissions never
put Weiss at risk of waiving a special appearance.

 





[22]The
order granting summary judgment states that one of the basis [sic] of the
Plaintiffs Motion for Summary Judgment were Requests for Admission served upon
Defendants on or about April 6, 2009, which as of the date of the hearing on
Plaintiffs Motion for Summary Judgment, had not been responded to in any form.